United States District Court
District of Massachusetts

| | |
|---|---|
| Brian Johnson, Kelley O'Neil, Christopher Johnson, Minor Child, <br><br> Plaintiffs, <br><br> v. <br><br> Town of Duxbury, Matthew Clancy, <br><br> Defendants. | Civil Action No. 16-12578-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This suit, brought under 18 U.S.C. § 1983, arises out of a dispute in which retired Duxbury police officer Brian Johnson ("plaintiff" or "Johnson") alleges that the Town of Duxbury (Massachusetts) and Chief of Police Matthew Clancy ("defendants") violated plaintiff's federal and state rights under the Fourth Amendment to the United States Constitution and the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H, 11I. Plaintiff asserts that defendants violated his civil rights by ordering him to produce his personal phone records pursuant to an internal affairs ("IA") investigation. Plaintiff brings this suit on behalf of himself and his family members whose phone records were produced as part of the IA investigation.

I.  **Background**

Brian Johnson is a retired police officer of the Duxbury Police Department.  Following his resignation in 2016, he brought a suit under § 1983 on behalf of himself and three family members, alleging that the Town of Duxbury ("the Town") and its Chief of Police Matthew Clancy ("the Chief") (collectively referred to as "defendants") violated his civil rights under federal and state law.[1]

In November, 2013, following an earlier IA finding of misconduct against plaintiff, he and his union signed an agreement with the Town, known as a Last Chance Agreement ("LCA" or "the Agreement"), whereby plaintiff was demoted and agreed that there was just cause to dismiss him from the Duxbury Police Department.  The LCA further states that if Johnson engages in any future serious misconduct, the Chief of Police has just cause to dismiss him.  Termination pursuant to the LCA was to be unreviewable under the grievance and arbitration procedures of the current collective bargaining agreement between the police union and the Town.  The actions of the Town were, however, to remain reviewable on arbitrary, capricious or substantial evidence grounds.

---

[1] Plaintiff brings the Massachusetts Civil Rights Act ("MCRA") claim against Chief Clancy only.

During the Fall of 2015, Johnson was contacted by a potential witness who claimed to have incriminating evidence with respect to an ongoing murder/robbery investigation in Marshfield, Massachusetts. Johnson disputes that he spoke to the witness but does not dispute that he failed to report to his commanding officer or to any other law enforcement agency that he received voicemail and text messages from the witness. Plaintiff thereafter was subpoenaed to testify before a grand jury regarding the murder investigation but again failed to report that fact to his superiors. Upon learning of Johnson's reticence, the Chief instructed his Deputy to open an investigation into the actions of Johnson and another officer. During this new IA investigation, plaintiff was represented by union counsel Kareem Morgan of the law firm Sandulli Grace, PC.

In February, 2016, Chief Clancy issued an order for Johnson to produce phone records as part of the IA investigation. Attorney Morgan told the Chief that Johnson would comply with the order only if it were narrowed in scope to records "reasonably related and germane" to the investigation. The Chief delayed issuing the order and his retained counsel, Fernand Dupere ("Attorney Dupere"), negotiated with Attorney Alan Shapiro of the same Sandulli Grace law firm with respect to

the scope of the phone records to be produced.² Shapiro agreed to produce redacted records of Johnson and another officer as part of the investigation. Chief Clancy issued the revised order for phone records with which plaintiff complied, albeit "under protest". The phone records encompassed information relating to Johnson and members of his family but Johnson was the account subscriber for all relevant lines. In July, 2016, during the pendency of the investigation, Johnson retired from the Duxbury Police Department. Following his retirement, he filed this § 1983 suit.

Pending before this Court is defendant's motion for summary judgment.

## II. Legal Analysis

### A. Legal Standard for Summary Judgment

The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing

---

² Shapiro testified at his deposition that the entire firm had been retained to represent the union and union members.

law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B. Defendants' Motion for Summary Judgment**

**1. Reasonable Search of Phone Records**

Plaintiff contends that defendants' search of his personal phone records violated his Fourth Amendment rights because defendants did not have probable cause for the search. Defendants respond that the standard of review with respect to a work-related investigation of an employee's personal phone

records is one of reasonableness, not probable cause. Defendants aver that the search was, in fact, reasonable in inception and scope because the records were 1) specifically related to an IA investigation, 2) redacted and 3) limited to nine phone numbers, all of which were germane to the investigation.

Public employer intrusions of the constitutionally protected privacy interest of government employees for legitimate investigations of work-related misconduct are analyzed under a standard of reasonableness, not probable cause. O'Connor v. Ortega, 480 U.S. 709, 725 (1987). The subject search must be reasonable in its inception and scope. Id. at 26. It is "justified" at inception when there are reasonable grounds to suspect that the search will reveal evidence that the employee has engaged in work-related misconduct. Id. Whether a search is reasonable in scope requires that the search be related to the objectives of the search and not excessively intrusive in light of the nature of the misconduct. Id.

Chief Clancy ordered Johnson to produce his personal phone records as part of an IA investigation. He was informed that Johnson may have 1) had information relating to an ongoing murder and robbery investigation and 2) testified at a grand jury pursuant to a subpoena without notifying his superiors. Because the Chief had reason to believe that Johnson's phone

records contained evidence of suspected work-related misconduct, the search was reasonable in its inception.  As to its scope, the Chief, after some pushback from Johnson's union counsel, agreed to limit the scope of the records search.  As such, the resulting intrusion into plaintiff's personal records was commensurate with his alleged misconduct and the Court concludes that the search was reasonable under the Fourth Amendment.

### 2. Plaintiff Voluntarily Consented to the Search

Defendants submit that plaintiff voluntarily consented to the search rendering the reasonableness inquiry under the Fourth Amendment moot.  Defendants contend that plaintiff was represented by two attorneys at the law firm of Sandulli Grace, PC (which was retained by plaintiff's union) at all material times and that counsel negotiated on plaintiff's behalf as to the production of the redacted phone records.  Defendants further aver that union counsel had actual and apparent authority to negotiate for plaintiff and that even if they did not have such authority, plaintiff ratified their actions by complying with the agreed production of his records.  Finally, defendants contend that plaintiff's consent to produce the phone records was binding on all parties because plaintiff had common authority over the cell phones of his family members and the home landline that were subpoenaed.

Johnson does not squarely respond to defendants' argument but in a footnote claims that the Chief at one point doubted whether union counsel had "legal standing" to make representations on behalf of Johnson. Plaintiff is equivocal as to whether counsel acted on his behalf and further claims that his conversations with union counsel related only to his fear of termination.

Notwithstanding the fact that employer searches of employee property is subject to a reasonableness standard, voluntary consent to a warrantless search is a well-recognized exception to the Fourth Amendment warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent must be freely and voluntarily given and courts look at the totality of the circumstances. Id. at 228. At all material times during the investigation, Johnson was represented by union counsel who negotiated with defendants to narrow the scope of the search. Pursuant to that negotiation, union counsel and Johnson produced the redacted records. While plaintiff protests that he agreed to produce his records only because he believed that his job security was threatened, he proffers no evidence apart from the LCA itself to support the alleged coercion. Moreover, to the extent Johnson claims that union counsel had no authority to consent on his behalf, that argument is moot in light of

defendant's reasonable belief to the contrary as addressed below.

Finally, with respect to the privacy interests of the other named plaintiffs (Johnson's family members), this Court agrees that Johnson's consent to produce relevant phone records is binding on them. U.S. v. Matlock, 415 U.S. 164, 170 (1974) (where a third party has common authority, usually through mutual use, joint access or control over premises or effects, one party's consent legitimizes the warrantless search). Defendants have shown that Johnson was the subscriber for all relevant lines and thus had common authority over them. As such, his consent is binding on his other family members.

Accordingly, this Court concludes that no reasonable juror could find that consent was invalid.

### 3. Defendant's Reasonable Belief

Johnson asserts that the Chief had no reasonable belief that Johnson consented to the search because 1) the Chief decided to investigate him based on hearsay and rumors and 2) the Chief questioned whether union counsel had authority to consent to the search on Johnson's behalf.

Defendants contend that the Chief reasonably believed that counsel had authority to consent to the search on Johnson's behalf based on the following facts: 1) union counsel stated in writing that he would be representing plaintiff in the IA

investigation, 2) union counsel assisted in composing Johnson's report about his communications with the alleged robbery witness, 3) union counsel confirmed that Johnson was willing to provide redacted records, 4) the Chief's counsel (Dupere) negotiated the redaction process with a partner from the law firm retained by the union (Shapiro), 5) the Chief revised his order for production of Johnson's records with Attorney Shapiro's approval and 6) Johnson complied with that order.

To the extent that plaintiff claims that his lawyer had neither actual nor apparent authority to consent on his behalf, consent is nevertheless valid where the officer, under an objective standard, reasonably believed that the third party had authority to consent. Illinois v. Rodriguez, 497 U.S. 177, 188 (1990); see also U.S. v. Meada, 408 F.3d 14, 21 (2005) (holding that the officers' reasonable belief that defendant's girlfriend had joint access to the apartment provided valid consent to the search). Defendants have demonstrated that attorneys from the Sandulli Grace firm made written and oral representations that they represented Johnson as part of the IA investigation. Johnson complied with the revised order, negotiated by counsel, and thus ratified counsel's apparent authority. Accordingly, this Court concludes that Chief Clancy was reasonable in his belief that Johnson consented to the search.

**4. Qualified Immunity for Defendant Clancy**

Johnson contends that qualified immunity does not apply because no reasonable chief or municipality would have understood that he willingly consented to search of the subject phone records.

Defendants respond that the Chief is entitled to qualified immunity because 1) there is no underlying constitutional violation and 2) even if the search had violated a constitutional right by limiting the scope of the order and accepting the redacted records, no reasonable officer would believe that the Chief had violated plaintiffs' constitutional rights.

To determine whether a law enforcement officer is entitled to qualified immunity, courts consider whether: 1) plaintiff's allegations establish a constitutional violation, 2) the constitutional right was clearly established at the time of the alleged violation and 3) a reasonable officer would have understood the act or omission to contravene a constitutional right. Limone v. Condon, 372 F.3d 39.  This Court finds that defendant did not violate plaintiff's constitutional rights by ordering the search because it was relevant and germane to the work-place investigation of plaintiff's alleged misconduct. Furthermore, assuming arguendo that a violation did occur by virtue of the negotiated production of redacted records, no

reasonable officer under the circumstances would believe that he violated plaintiff's constitutional rights. Johnson's alternative claim that the underlying constitutional violation was the coercion of his consent (due to the LCA) is without merit and, accordingly, Chief Clancy is entitled to a qualified immunity defense.

### 5. Monell Claim

Johnson argues that the Town is liable under a Monell theory of liability because the Chief was the final decision maker with respect to the investigation and his decisions intentionally deprived Johnson of his civil rights.

Defendants deny that a viable Monell claim exists because plaintiff cannot show that 1) the Chief committed an underlying constitutional violation or 2) the Town engaged in any unconstitutional custom, policy or practice. Moreover, defendants note that, by claiming that the Chief breached the Town's policy of observing constitutional rights of the parties with respect to internal investigations, Johnson concedes that the Town's policy is constitutional and thus no Monell claim survives.

To establish a Monell claim against a municipality, plaintiff must show 1) plaintiff's harm was caused by a constitutional violation and 2) the municipality is responsible for that violation. Oklahoma City v. Tuttle, 471 U.S. 808, 817

(1985). Johnson cannot establish that the search of his records or the circumstances surrounding it constituted a constitutional violation because it was reasonable in its inception and scope. Nor can plaintiff show that the LCA was inherently coercive. Those facts alone eliminate plaintiff's Monell claim.

### 6. Threats, Intimidation or Coercion under the MCRA

Johnson submits that defendants interfered with his federal and state rights because the Chief undertook the unreviewable actions of demoting him in 2013, removing him from patrol to desk duty in 2016 and ordering him to produce phone records under threat of termination.

Defendants respond that Johnson was not coerced because he entered into the LCA voluntarily and thus the potential disciplinary action resulting from the 2015 IA investigation did not render the request for records a "threat". Furthermore, defendants note that Johnson's resignation carries a presumption of voluntariness which he has not overcome.

Parties may sue under the Massachusetts Civil Rights Act ("MCRA") when their federal or state rights have been interfered with through threats, intimidation or coercion. M.G.L. c. 12, §§ 11H, 11I. Johnson has not, however, adequately informed the Court of what constitutional or statutory violation is being alleged under the MCRA. To the extent that he claims that the underlying constitutional violation relates to the search, his

claim is deficient for the reasons set forth above. The same is true to the extent his argument hinges on the supposition that the LCA is inherently coercive. Courts have upheld disciplinary agreements such as a "Last Chance Agreement" as "part and parcel" of collective bargaining agreements ("CBAs"). Connolly v. Boston Edison Co., No. CIV.A.00-11849-PBS, 2001 WL 575868, at *4 (D. Mass. May 15, 2001); see, e.g., Int'l Union of Operating Eng'rs Local 351 v. Cooper Natural Res., Inc., 163 F.3d 916, 919–20 (5th Cir. 1999) (last chance agreement "formed a binding contract pursuant to the CBA" and must be treated as a supplement to the CBA); Bakers Union Factory No. 326 v. ITT Cont'l Baking Co., 749 F.2d 350, 354–55 (6th Cir. 1984) (agreements reached as part of disciplinary process constitute formal contractual settlements of labor disputes and should be construed as part of the CBA).

Moreover, plaintiff entered into the LCA to avoid dismissal for just cause pursuant to a negative finding in an earlier IA investigation. Johnson has at times suggested that there was not "substantial evidence" to support the 2013 IA findings but at no time has he claimed that the 2013 findings or the subsequent LCA were invalid or retaliatory. He cannot now retroactively allege coercion because he faced imminent disciplinary action in 2016. As such, this Court concludes there is no valid MCRA claim.

**7. Constructive Discharge and Provoked Insubordination**

Johnson now proffers a different theory of coercion under the LCA.  He submits that he believed he would lose his pension or health insurance if he opposed the order to produce phone records because any adverse decision by the Chief was unreviewable under the LCA.  This, plaintiff asserts, amounts to a constructive discharge.  He also avers that the Chief tried to provoke him and that but for the Chief's provocation, he would not have resigned.  In support of that claim, he alleges that the Chief imposed more severe sanctions than necessary and insisted on the "warrantless" search in an effort to chill opposition to the IA investigation and to coerce plaintiff into early retirement.

Defendants reply that Johnson did not previously allege the unconstitutionality of the LCA, constructive discharge or provoked insubordination in his complaint and thus this Court should not consider such claims under summary judgment.  Even if the new claims were before this Court, defendants submit they are untenable because plaintiff voluntarily entered into the LCA and his resignation created a presumption of voluntariness.

This Court has previously declined to consider arguments raised for the first time in opposition to a motion for summary judgment. Carroll v. City of Quincy, 441 F. Supp. 2d 215, 224 (D. Mass. 2006).  Such a declination is warranted here but, in

the interest of completeness and because plaintiff has alleged plausible theories of constructive termination and provoked insubordination, his latter day arguments will be considered.

Under a constructive discharge claim, plaintiff must show that a reasonable person in his position would have felt compelled to resign and that he did actually resign. Cherkaoui v. City of Quincy, 877 F.3d 14, 29 (1st Cir. 2017).  The working conditions must be so onerous, abusive or unpleasant as to leave a reasonable person with no choice. Id.  While plaintiff did in fact resign, he has failed to proffer any evidence that the "coerced" circumstances were not of his own doing.  Johnson was found to have violated department policy in 2013 and stipulated that the Chief had just cause to terminate him.  Rather than being terminated, he agreed to enter into the LCA (with his union's approval) and to be subject to higher scrutiny with respect to future discipline.  Plaintiff was demoted as a result of the 2013 disciplinary action and has proffered no evidence, other than his own self-serving affidavit, that the subsequent disciplinary action was retaliatory in any way.

While specifically subject to the LCA, plaintiff failed to report contact from a person who purported to have information relating to an ongoing murder and robbery investigation or that he had been subpoenaed to testify before a grand jury.  As a result, the Chief ordered an IA investigation and the production

of relevant records. Because no reasonable juror could find that defendants acted in a retaliatory or coercive manner, this Court concludes that plaintiff was not subject to onerous, abusive or unpleasant conditions during his employment and that he has no viable constructive discharge claim.

As to the remaining claim of provoked insubordination, the First Circuit has recognized that an employer cannot rely on its employee's adverse reaction to the employer's provocation to justify termination. <u>Trustees of Boston Univ.</u> v. <u>N.L.R.B.</u>, 548 F.2d 391, 393 (1st Cir. 1977). Plaintiff has not, however, demonstrated how his own misconduct of not reporting information regarding an ongoing murder investigation relates to any wrongful reaction by the Chief. The IA investigation emanated from Johnson's personal conduct. Because he has failed to show how the Chief provoked him, this Court concludes there is no viable claim for provoked insubordination.

### ORDER

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 42) is **ALLOWED**.

**So ordered.**

                                                                                         _/s/ Nathaniel M. Gorton_____
                                                                                         Nathaniel M. Gorton
                                                                                         United States District Judge

Dated October 23, 2018